IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01224-WDM-MJW

SHAWN D. ALLEN,

Plaintiff,

v.

WARDEN LARRY REID, et al.,

Defendants.

---

**RECOMMENDATION ON MOTION TO DISMISS (Docket No. 27)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to a Minute Order entered by District Judge Walker D. Miller on August 15, 2007. (Docket No. 19).

**Plaintiff's Allegations**

In his second amended Prisoner Complaint, which is brought pursuant to 42 U.S.C. § 1983 (Docket No. 15), the pro se incarcerated plaintiff names as defendants Larry Reid, the former warden of Centennial Correctional Facility ("CCF"); William Richter, a disciplinary hearing officer; Sgt. Schumtzuer, an officer at CSP; and Lt. Shawna Troxel, an officer and a disciplinary hearing officer. Plaintiff alleges the following in that pleading.

On July 12, 2006, plaintiff had a "skirmish" with graveyard staff sergeant defendant Schmutzler, and plaintiff told her he would file a grievance against her. Several hours later during the same shift, Schmutzler woke plaintiff up at 5 a.m. as a

provocation. Plaintiff sent a "kite" to case manager Hunter requesting a Step 1 grievance form, mentioned the "skirmish," and asked for the name of the female sergeant who worked that unit. Hunter later informed plaintiff that he never received that kite. Plaintiff is convinced Schmutzler "tossed it" as well as an envelope of plaintiff's legal work to be copied. Plaintiff discussed the incident with case manager Roberts on July 13, 2006, and asked for a grievance form.

Several days after the "skirmish," plaintiff was given a notice of charges written by Schmutzler falsely accusing plaintiff of "count interference." Plaintiff does "recall being awaken at 5 am but [he] was not completely covered. Sgt. Schmutzler was angry with [plaintiff] for threatening to submit complaint, woke [plaintiff] at five in the morning out of malice." (Docket No. 15 at 7-8). Plaintiff perceives that "bogus charge to be an act of reprisal for threat to submit a complaint." (Docket No. 15 at 4). Schmutzler retaliated against plaintiff because "but for Sgt. Schmutzlers [sic] malicious misconduct on 7.12.2006 [plaintiff] would have progressed out of administrative segregation last year - 2006 - owing to the fact that this bogus charge is the only 'incident' [plaintiff has] had I [sic] '3 years'. But for the conviction (which would never had been were my witnesses called) [plaintiff] would be back in general population." (Docket No. 15 at 5).

Plaintiff was denied due process of law at his disciplinary hearing on July 31, 2006, when defendant Richter denied plaintiff's witnesses who would have attested to the "skirmish"[1] and plaintiff's threat of a grievance. More specifically, plaintiff would

---

[1]This purported "skirmish" was described by plaintiff in his pleading as follows:

On 7.12.06 I gave Sgt. Schmutzler a sealed manila envelope

have called inmate Lucera to attest to the "skirmish," as well as case managers Hunter and Roberts. In addition, during that hearing, defendant Troxel ordered plaintiff to refrain from further mentioning the July 12 "skirmish" and plaintiff's threat of submitting a grievance. Therefore, plaintiff was in effect denied his opportunity to defend himself. Schmutzler did not attend the disciplinary hearing, and although the Department of Corrections has the burden of proof, no evidence was presented. Plaintiff was found guilty solely on Schmutzler's incident report. Defendant "Warden Larry Reids [sic] failure to remedy 'violations' - [plaintiff] suffered - when [plaintiff] appealed via administrative procedures . . . ." (Docket No. 15 at 9).

For the remanded hearing, defendant Troxel revised the incident report, "leaving out key info' and adding a second charge of 'disobeying a direct order'. When in violation of [plaintiff's] Fifth Amendment right [plaintiff] was found guilty after pleading not guilty at remanded hearing 4.11.07 for remaining silent.... [Plaintiff] could not progress out of 'Ad-Seg.'" (Docket No. 15 at 9).

In his Request for Relief, plaintiff states:

> "Wrongful confinement in 'administrative segregation' constitutes

---

addressed to CSP law library. I had legal letter to be copied. Realizing I forgot to include a required form I asked Schmutzler to please return envelope to me so I could add said form. Mind you a 'mail box' for legal assistant is in unit office where said materials are placed for later pick up. Schmutzler volunteered to put required form in envelope rather than return to me it [sic]. [The envelope was never received by the library staff.] I said no and a skirmish ensued. I told Schmutzler to give me "her" name so I could file grievance on "her" misconduct. Schmutzler refused to give it to me and walked away. All this before 5 o'clock count.

(Docket No. 15 at 6).

compensable injury under 1983 entitling inmate more than nominal damages." (Patterson v. Coughlin 905 F.2d 564?). Sgt. Schmutzlers [sic] bogus and calumnious charge of count interference outright obstructed my progressing out of "Ad-Seg." Such malicious misconduct served to exacerbate my already severe conditions of 24 hour lock down by my sentence of 10 days loss of recreation time, 100 telephone, no canteen, my color T.V. was taken. But most devastating is the fact that the bogus infraction obstructed my return to population. It is my conviction such was Schmutzlers [sic] intent when initiating the false charge. But for the conviction of said charge; the denial of vital witnesses who would have altered the outcome, the "conflict of interest" when Lt. Shawna Troxel revised report of incident and added a second count that previously did not exist . . . but for these violations of my constitutional rights I would not still be on "Ad-Seg" as I am today 7.28.07. After all I have had no other infractions for the 2 years on "Ad-Seg" prior to this "incident" and none since. All listed defendants in one role or another violated by civil rights and deprived me of my liberty interest without due process.

In relief I am seeking $200.00 for each day I have suffered of extended "Ad-Seg" starting from July 31, 2006 date of guilty finding. And the return of court related cost in 106 action = $152.07.

(Docket No. 15 at 11-12).

**Defendants' Motion to Dismiss**

Now before the court for a report and recommendation is the Motion to Dismiss (Docket No. 15) filed by three of the four defendants, Reid, Richter, and Troxel.[2] The moving defendants seek dismissal on the following grounds: (1) plaintiff's claims against defendant Reid fail to state a claim upon which relief can be granted due to lack of personal participation; (2) plaintiff's § 1983 claims for damages arising out of the alleged violations of due process during his disciplinary hearing and his continued placement in administrative segregation fail to state a claim upon which relief can be granted; and (3) plaintiff's claim against defendant Troxel based upon her alleged

---

[2]Defendant Schmultzer filed an Answer on October 22, 2007. (Docket No. 26).

revisions to the Incident Report used at the second disciplinary hearing fails to state a claim upon which relief can be granted. Plaintiff filed a response to this motion. (Docket No. 39).

The court has considered the motion and response, applicable Federal Rules of Civil Procedure and case law, and the court's file. The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motion be granted.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

"[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleading has been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Defendant Reid's Personal Involvement**

The moving defendants first assert that the plaintiff's allegations against defendant Reid that are contained in the body of the Prisoner Complaint are solely that Reid "failed to remedy" the violations that plaintiff alleges he suffered during the disciplinary hearing process. Defendants contend that

> this bald, conclusory allegation is not sufficient to allege the requisite

> personal participation necessary to state a 42 U.S.C. § 1983 claim against Defendant Reid. Defendant Reid was the Warden of the facility where the incidents in question occurred. There are no allegations that he had any role in, or knowledge of, the alleged skirmish between Plaintiff and Defendant Schmultzer or of Defendant Schmultzer's alleged retaliation against Plaintiff. Nor are there any allegations that Defendant Reid had any role during Plaintiff's disciplinary hearings. There are no allegations indicating that Defendant Reid participated in, or acquiesced to, the alleged due process violations of which Plaintiff complains. Nor are there any allegations showing that Defendant Reid had any actual knowledge of the incidents complained of, either before or after they occurred.
>
> It appears that the sole basis for Plaintiff's claims against Defendant Reid is his position as the Warden of the facility. In essence, Plaintiff alleges that Defendant Reid should be liable under the theory of *respondeat superior* for the actions of the other Defendants, and/or that he was somehow negligent in his supervision of the other individuals discussed in the Complaint. As set forth above, such allegations are inadequate to meet the personal participation requirement. . . .

(Docket No. 27 at 4-5).

In response, plaintiff states:

> Warden Reid regardless of statements in defendants [sic] motion did have knowledge of my due process procedural rights having been violated. "Reid" upheld the guilty verdict when I appealed and was made aware of said violations during my 106 action in Fremont District Court. "Reid" on two different dates expunged infractions. The above contradicts the untruths stated in motion to dismiss "Reid" as a defendant.

(Docket No. 39 at 1).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a

supervisor may not be liable for injuries caused by the conduct of one of his subordinates.  It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

      Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.  To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

      In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted).  Furthermore, even under the liberal pleading standards applied to pro se litigants, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Here, reading the second amended Prisoner Complaint liberally and in the light most favorable to the plaintiff, this court finds that the plaintiff has not alleged the requisite personal involvement of defendant Reid.  The averments plaintiff makes in his pleading regarding Reid are, at best, conclusory.  Even if this were not the case, for the

reasons stated below, it is recommended that the defendants' motion be dismissed as against the three moving defendants for failure to state a claim.

**First Disciplinary Hearing**

The moving defendants next assert that the plaintiff's § 1983 claim for damages arising out of the alleged due process violations during his first disciplinary hearing and his continued placement in administrative segregation fail to state a claim upon which relief can be granted. The court agrees, at least in part, with defendants' argument.

Plaintiff alleges he was denied due process of law at his first disciplinary hearing as a result of being denied witnesses by defendant Richter, being told by defendant Troxel to refrain from further discussing the "skirmish" and plaintiff's threat to file a grievance, and because no evidence was submitted and instead the decision was based solely on the incident report. As correctly noted by the moving defendants, however, according to plaintiff's allegations, that first hearing was remanded for a new hearing. Furthermore, plaintiff was apparently found guilty in the remanded disciplinary proceedings and there is no allegation in the pleading that a lesser sanction was imposed on rehearing. Even reading plaintiff's pleading liberally, reading it as a whole, this court finds that no viable due process claim remained regarding the first disciplinary hearing once plaintiff sought and obtained relief. See Gaines v. Stenseng, 2006 WL 219910 (D. Kan. Jan. 27, 2006) (citing, e.g., Ragan v. Lynch, 113 F.3d 875) (8th Cir. 1997) (defects in prison disciplinary proceeding were remedied by state court's actions); Young v. Hoffman, 970 F.2d 1154 (2d Cir. 1992) (no need to decide due process violation because prisoner ultimately afforded due process by administrative

reversal and expungement of disciplinary proceeding); In re Hancock, 192 F.3d 1083, 1086 (7th Cir. 1999)). Therefore, dismissal is recommended with respect to plaintiff's claim against defendant Richter, as well as with respect to plaintiff's due process claim against defendant Troxel that arises out of the first disciplinary hearing.

**Second Disciplinary Hearing**

Plaintiff alleges that defendant Troxel violated his due process rights at the second hearing by leaving out information from the incident report following remand and by adding the charge of disobeying a direct order. This court agrees with the moving defendants that even assuming these allegations are true, these allegations fail to state a claim upon which relief can be granted. As correctly noted by these defendants, the United States Supreme Court has long held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Moreover, an inmate is entitled only to notice of the charges at least twenty-four hours before the hearing, an opportunity to present documentary evidence and witnesses at the hearing consistent with institutional safety, written findings as to the facts relied upon and reasons for the action taken, some evidence to support the hearing decision, and an impartial decision-maker. Id. at 563-66; Mitchell v. Maynard, 80 F.3d 1433, 1445 (10th Cir. 1996). Plaintiff has not claimed that he was denied any of the rights articulated in Wolff at his second hearing. There is no established due process right for an inmate to have particular information the inmate felt was important included in the incident report or which precludes another disciplinary charge from

being brought during a remanded hearing. Therefore, this court finds that plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1983 upon which relief can be granted with respect to the second disciplinary hearing.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss (Docket No. 27) be granted, and that the second amended Prisoner Complaint (Docket No. 15) be dismissed with prejudice as against three of the four defendants, namely, defendants Reid, Richter, and Troxel.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: March 31, 2008                   s/ Michael J. Watanabe
     Denver, Colorado               Michael J. Watanabe
                                               United States Magistrate Judge