IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-01224-CMA-MJW

SHAWN D. ALLEN,

Plaintiff,

v.

SGT. SCHMUTZLER,

Defendant.

---

**RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 (Docket No. 118)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to a Minute Order entered by District Judge Walker D. Miller on August 15, 2007.  (Docket No. 19).  The case was subsequently reassigned in October 2008 to District Judge Christine M. Arguello upon her appointment.  (Docket No. 97).

**PLAINTIFF'S ALLEGATIONS**

In an Order on Recommendation of Magistrate Judge issued by Judge Miller on July 3, 2008, this case was dismissed with prejudice with respect to defendants Reid, Richter, and Troxel.  (Docket No. 77).  Therefore, only one defendant remains, namely, Sgt. Schumtzler, a sergeant at Colorado State Penitentiary.

In his second amended Prisoner Complaint, which is brought pursuant to 42 U.S.C. § 1983 (Docket No. 15), plaintiff alleges the following with respect to Sgt.

2

Schumtzler. On July 12, 2006, plaintiff had a "skirmish" with Sgt. Schmutzler. Plaintiff claims that he gave Sgt. Schmutzler a sealed envelope addressed to the law library because he had a legal letter to be copied. Plaintiff then realized he forgot to include a required form, so he asked Sgt. Schmutzler to return the envelope to him so he could add the form. Sgt. Schmutzler offered to put the form in the envelope for the plaintiff rather than return the envelope to plaintiff, but plaintiff declined, "and a skirmish ensued." (Docket No. 15 at 6). More specifically, plaintiff asked Sgt. Schmutzler for her name so he could file a grievance on her misconduct, but she refused to give her name and walked away. Several hours later during the same shift, Sgt. Schmutzler woke plaintiff up at 5 a.m. as a provocation. Plaintiff sent a "kite" to case manager Hunter requesting a Step 1 grievance form, mentioned the "skirmish," and asked for the name of the female sergeant who worked that unit. Hunter later informed plaintiff that he never received that kite. Plaintiff is convinced Sgt. Schmutzler "tossed it" as well as an envelope of plaintiff's legal work to be copied. Plaintiff discussed the incident with case manager Roberts on July 13, 2006, and asked for a grievance form.

Several days after the "skirmish," plaintiff was given a notice of charges written by Sgt. Schmutzler falsely accusing plaintiff of "count interference." Plaintiff does "recall being awaken at 5 am but [he] was not completely covered. Sgt. Schmutzler was angry with [plaintiff] for threatening to submit complaint, woke [plaintiff] at five in the morning out of malice." (Docket No. 15 at 7-8). Plaintiff perceives that "bogus charge to be an act of reprisal for threat to submit a complaint." (Docket No. 15 at 4). Sgt. Schmutzler retaliated against plaintiff because "but for Sgt. Schmutzlers [sic] malicious misconduct on 7.12.2006 [plaintiff] would have progressed out of administrative segregation last

3

year - 2006 - owing to the fact that this bogus charge is the only 'incident' [plaintiff has] had I [sic] '3 years'. But for the conviction (which would never had been were my witnesses called) [plaintiff] would be back in general population." (Docket No. 15 at 5). In addition, Sgt. Schmutzler "no doubt" discarded plaintiff's envelope "full of legal work to be copied" as plaintiff learned from library staff that the envelope never reached them.

> In his Request for Relief, plaintiff states:
>
> > "Wrongful confinement in 'administrative segregation' constitutes compensable injury under 1983 entitling inmate more than nominal damages." (Patterson v. Coughlin 905 F.2d 564?). Sgt. Schmutzlers [sic] bogus and calumnious charge of count interference outright obstructed my progressing out of "Ad-Seg." Such malicious misconduct served to exacerbate my already severe conditions of 24 hour lock down by my sentence of 10 days loss of recreation time, 100 telephone, no canteen, my color T.V. was taken. But most devastating is the fact that the bogus infraction obstructed my return to population. It is my conviction such was Schmutzlers [sic] intent when initiating the false charge. But for the conviction of said charge; the denial of vital witnesses who would have altered the outcome, the "conflict of interest" when Lt. Shawna Troxel revised report of incident and added a second count that previously did not exist . . . but for these violations of my constitutional rights I would not still be on "Ad-Seg" as I am today 7.28.07. After all I have had no other infractions for the 2 years on "Ad-Seg" prior to this "incident" and none since. All listed defendants in one role or another violated by civil rights and deprived me of my liberty interest without due process.
> >
> > In relief I am seeking $200.00 for each day I have suffered of extended "Ad-Seg" starting from July 31, 2006 date of guilty finding. And the return of court related cost in 106 action = $152.07.

(Docket No. 15 at 11-12).

The Final Pretrial Order states that "[p]laintiff asserts one claims [sic] for relief. Plaintiff asserts: 1. That Defendant acted in retaliation toward him for exercising his constitutional right to access the courts by filing grievances, resulting in a Code of Penal

4

Discipline conviction that prolonged his stay in administrative segregation." (Docket No. 151 at 2, § 3(A)(1)).

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the court for a report and recommendation is the defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (Docket No. 118). Defendant seeks summary judgment on the following three grounds: (1) plaintiff's retaliation claim is barred due to plaintiff's failure to comply with the Prison Litigation Reform Act's ("PLRA") exhaustion requirement, (2) in the alternative, plaintiff's claim is barred because he failed to obtain a "favorable termination" of the prison disciplinary conviction he alleges defendant Schmutzler initiated against him, and (3) in the alternative, any claims for monetary damages for mental or emotional distress are barred or limited by the PLRA due to plaintiff's failure to show a physical injury. Plaintiff filed a "Response and Affidavit" in response to the summary judgment motion. (Docket No. 129). Defendant then filed a Reply (Docket No. 136), which she was subsequently permitted to supplement (see Docket Nos. 138 and 142). The court has very carefully considered these motion papers and applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motion be granted.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). See Fed. R. Civ. P. 56(e)(2). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative

6

inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is proceeding without counsel, his pleadings have been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

### **Exhaustion of Administrative Remedies**

Defendant first asserts in her summary judgment motion that the plaintiff's retaliation claim is barred due to the plaintiff's failure to comply with the PLRA's

exhaustion requirement. The PLRA, *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). "In *Booth*, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation." Beaudry, 331 F.3d at 1167.

The "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). As an affirmative defense, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007). "When raising an affirmative defense in a motion for summary judgment, '[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.' . . . 'If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact.' . . . 'If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the

8

defendant is entitled to summary judgment as a matter of law.'"  Sparks v. Foster, 241 Fed. Appx. 467, 472, 2007 WL 1748509, at *4 (10th Cir. 2007) (quoting Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997)).

The Colorado Department of Corrections ("CDOC") has a multi-step administrative grievance process available to inmates set forth in its regulations which entails first a written informal grievance and then a formal three-step written grievance procedure.  See CDOC Administrative Regulation 850-4; Docket No. 118-5, Def.'s Ex. A-4, Aff. of Anthony Decesaro at ¶¶ 4-8; Docket No. 138-2, Def.'s Ex. A-8, Aff. of Anna Cooper, ¶¶ 4-9.  Here, defendant asserts that the plaintiff did not exhaust the administrative remedies made available to him by the CDOC because he did not file a Step 3 grievance concerning his complaint that defendant was retaliating against him.  Accordingly, defendant argues that the plaintiff's claim against her is barred by the PLRA.

In response, plaintiff contends that on October 9, 2006, he submitted a Step 3 grievance against the defendant by sealing it in an envelope and giving it to the Unit Officer to put in the case manager's box.  Plaintiff further claims that several weeks later when asked about a response, case manager Hunter told him responses are late.  In addition, plaintiff alleges that by February 2007, "something was clearly amiss" as he was never informed that the Step 3 grievance was not recorded, and by the time he did know, it was "far too late to resubmit."  (Docket No. 129 at 5).  Plaintiff contends that such mishandling of prisoner grievances is not unique, claiming that long before, during, and after defendant's alleged violations, plaintiff had had several grievances and complaint letters go "missing."  Plaintiff gives examples and provides exhibits to show

how other grievances were allegedly mishandled.

The Tenth Circuit has found that an inmate must appeal his grievance through all available channels to exhaust his administrative records fully. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." ). There is, however, a recognized exception to the requirement when an inmate has been prevented from filing a grievance. See id.

This court, however, agrees with the defendant's argument that the plaintiff has not come forward with sufficient evidence to justify being excused from the exhaustion requirement sufficient to avoid the entry of summary judgment.[1] Plaintiff has not provided a copy of the Step 3 grievance he allegedly submitted or actual evidence that would allow the court to conclude that it was in fact submitted. Moreover, defendant has shown that even assuming plaintiff's allegation that he submitted a Step 3 grievance is true, the evidence shows that after the time to receive a response to the grievance expired, plaintiff took no diligent steps to ascertain that the grievance had

---

[1] As an aside, the court notes that in his Step 1 grievance, plaintiff complained only about defendant's alleged destruction of the legal documents he placed in a sealed envelope for the law library. Significantly, he made no mention of the alleged retaliation by the defendant in the Step 1 grievance. (Docket No. 129 at 24). Instead, plaintiff raised the alleged retaliation in passing in his Step 2 grievance. (Docket No. 129 at 25). Plaintiff thus did not raise his retaliation claim in each step of the administrative grievance process. Furthermore, the responses to the Step 1 and 2 grievances refer only to plaintiff's claim that defendant discarded plaintiff's legal materials.

According to the current Administrative Regulation concerning grievances, a substantive issue may not be added at a later step if it has not been contained in each previous step of that particular grievance. See Administrative Regulation 850-04(IV)(E)(1).

10

been lost[2] and did not attempt to refile it. Instead, he filed this lawsuit.

As stated in the Affidavit of Anna Cooper, a CDOC Step 3 Grievance Officer, according to the CDOC's grievance procedures in 2006, an inmate was required to file a Step 3 grievance within five calendar days of the denial of the Step 2 grievance, and a response to the Step 3 grievance would be due within 45 days after it was received by the Step 3 grievance officer. Here, plaintiff's Step 2 grievance was denied on September 27, 2006. (Docket No. 129 at 25). Therefore, as noted by the defendant, if plaintiff had filed his Step 3 grievance by October 2, 2006, the response would have been due approximately 45 days later, or by November 16, 2006.

As shown by the defendant, the CDOC has no record that such Step 3 grievance was filed. While plaintiff has submitted copies of other grievances and letters in which he inquired about the status of other grievances to which he had not received a response, none of those documents concerns the alleged loss of the Step 3 grievance concerning Sgt. Schmutzler. As noted by the defendant, almost all of these documents predate the time period in which plaintiff filed the Step 1 and Step 2 grievances concerning his claims here, so they could not concern the alleged loss of the plaintiff's Step 3 grievance regarding Sgt. Schmutzler. (See Docket No. 129, at 29, 38, 39, 40, and 41). Those documents reference grievance numbers other than the one assigned to this matter (CS06/07-93) and concern complaints against other staff.

Furthermore, as also correctly noted by the defendant, the only grievance form

---

[2]One of plaintiff's exhibits even shows that in January 2006, he was told in a Step 1 grievance response that he could "write the grievance liason [sic] to find out if your grievance has been processed." (Docket No. 129 at 41).

attached to the Response which is dated after the filing of the Step 2 grievance and which concerns plaintiff's complaints about lost grievances makes no mention that a Step 3 grievance concerning Sgt. Schmutzler was lost, nor does it make reference to Grievance No. CS-6/07-93. (Docket No. 129 at 37). Moreover, the only document submitted by plaintiff with his Response which concerns the alleged loss of his Step 3 grievance concerning Sgt. Schmutzler/Grievance No. CS06/07-93 is a memorandum dated January 24, 2008 (Docket No. 129 at 26). That memorandum states that there was no entry in the Legal Database for a Step 3 nor a copy of that grievance regarding Grievance No. CS06/07-93. Instead, there were Step 1 and Step 2 grievances. In addition, the memorandum states that there was a notation in the case managers' records that the plaintiff had been served with the Step 2 grievance response, but plaintiff made no request for a Step 3 grievance form. Defendant asserts that the latter notation suggests that plaintiff did not actually ever submit a Step 3 grievance form concerning Sgt. Schmutzler.

The evidence submitted by plaintiff shows that plaintiff is capable of grieving grievances that were allegedly lost or for which he had not received a response because he did so with respect to other grievances. In contrast, there is no evidence that he did so here, and he did not even inquire about the Step 3 grievance concerning Sgt. Schmutzler until over one year after the Step 3 grievance response was due and about six months after plaintiff commenced this action. Moreover, there is no evidence that he contacted the Step 3 grievance officer, not only about the alleged loss of the Step 3 grievance, but more importantly requesting that he be permitted to refile it. Plaintiff merely makes an unsupported claim that it was too late to refile the Step 3

grievance.  It is well established, however, that futility or other exceptions will not be read into the PLRA's statutory exhaustion requirement.  Booth v. Churner, 532 U.S. at 741 n.6 (2001).  Plaintiff also has provided no evidence, other than speculation, that his Step 3 grievance was destroyed.  Therefore, there is no evidence that he was prevented from filing it.

In sum, the court agrees with the defendant that the evidence shows that the plaintiff made no genuine attempt to complete the exhaustion process before filing this action because he commenced this action before receiving a Step 3 grievance response and without even inquiring as to why he had not receive a response or asking to be permitted to refile it.  As shown by the defendant, according to the CDOC Administrative Regulations, an inmate has not exhausted his administrative remedies until he has received a response to his Step 3 grievance.  (Docket No. 118, Ex. A-4, p. 1, ¶ 8).

Plaintiff should not be permitted to circumvent the PLRA's requirement that administrative remedies be exhausted prior to bringing the claim here by simply alleging that his grievance must have been lost or destroyed without having made a diligent inquiry about its receipt or moreover without ever making an attempt to refile it once the time period for a response had elapsed.  To find otherwise would permit any inmate to circumvent the exhaustion requirement merely by making bald allegations, even under oath, of destruction or loss of a grievance.  See White v. Tharp, 2008 WL 596156, *10 (D. Colo. Feb. 29, 2008) (Inmate plaintiff never provided copies of his grievances to the court or any actual evidence that would allow the court to conclude that they were filed.  Plaintiff provided no more than his unsupported conclusory allegations regarding

defendants' alleged obstruction of his use of the administrative process, which were not sufficient to create a genuine issue of material fact.); Brooks v. Johnson, 2008 WL 906130 (D. Colo. Feb. 15, 2008) (Inmate plaintiff merely stated in his response that he did file an appeal and that grievance forms are frequently lost, misplaced, or destroyed. The absence of any evidence, other than plaintiff's allegation in his response, was insufficient.), Report & Recommendation adopted, 2008 WL 906839 (D. Colo. Mar. 31, 2008), aff'd, 307 Fed. Appx. 247 (10th Cir. Jan. 16, 2009), pet. for cert. filed (May 18, 2009) (No. 08-10794); Maclary v. Carroll, 142 Fed. Appx. 618, 2005 WL 1883843 (3rd Cir. Aug. 9, 2005) (In response to an affidavit stating the inmate plaintiff filed no grievances concerning the conditions at issue, the inmate merely responded that he filed unanswered and unprocessed grievances and letters to prison officials, but he did not offer any support for those bare assertions.  Court found his opposition to defendants' summary judgment motion did not create a genuine issue for trial.); Brooks v. Conway, 2007 WL 951521, at *4 (W.D.N.Y. Mar. 28, 2007) (Inmate plaintiff's "bald and conclusory assertions" that the defendants lost his grievance papers were, without more, insufficient to avoid summary judgment on plaintiff's claim based on failure to exhaust.).

In sum, this court finds that the plaintiff failed to exhaust his administrative remedies with respect to his claim against defendant.  Therefore, it is recommended that the defendant's motion for summary judgment be granted.

### **Lack of Favorable Termination of COPD Conviction**

In the alternative, defendant asserts that the plaintiff's retaliation claim is barred because the plaintiff failed to obtain a "favorable termination" of the prison

disciplinary conviction he alleges defendant initiated against him. According to the defendant, such a favorable termination requirement applies to § 1983 claims challenging prison disciplinary convictions when resolving the inmate's claims would necessarily or independently implicate the duration of the inmate's confinement. See Muhammad v. Close, 540 U.S. 749, 754 (2004); Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477, 487 (1994). Defendant notes that the duration of the inmate's confinement may be affected when good time or earned time credit is taken away from the inmate as a sanction for the disciplinary violation, but even when time credit is affected, it may not always affect the length of the inmate's sentence but may only affect the date that the inmate becomes eligible for parole. Muhammad v. Close, 540 U.S. at 754. According to the defendant, in Colorado, inmates may be awarded two different types of time credit, namely, good time credit and earned time credit. Good time credit, which is awarded for good behavior while in prison, affects the date upon which an inmate may become eligible for parole, whereas earned credit affects the date the inmate is released from incarceration.

Here, defendant asserts that a verdict in the plaintiff's favor would necessarily invalidate his prison disciplinary conviction because plaintiff's allegations are that his COPD conviction resulted from false allegations made by defendant in order to retaliate against him. In addition, defendant points out that plaintiff explicitly alleges in his Responses to Interrogatory No. 8 regarding his damages and in his Rule 26(a) Initial Disclosures that he is seeking the restoration of earned time credit which he alleges was wrongfully withheld from him as a result

15

of the defendant's false allegations and the resulting COPD conviction. (Docket No. 118-4, Def.'s Ex. A-3, p. 4, Resp. No. 8; Docket No. 95, Plaintiff's Initial Disclosures, p. 2, § III, "Computation of Damages). Defendant notes that under Colorado law, earned time credit affects that date an inmate is released from incarceration because it operates to reduce the term for which an inmate is sentenced. (Docket No. 118 at 11, citing § 17-22.5-402(1), (C.R.S.) (2007)) ("The full term for which an inmate is sentenced shall be reduced by any earned time granted . . . ."); § 17-22.5-405(1), C.R.S. (2007) ("earned time, not to exceed ten days for each month of incarceration or parole, may be deducted from an inmate's sentence . . . ."); § 17-22.5-405(4) ("[E]arned time may not reduce the sentence of any inmate . . . by a period of time which is more than twenty-five percent of the sentence.")).

Since the plaintiff expressly states that he is seeking the restoration of earned time credits that he alleges were wrongfully withheld from him as a result of the prison disciplinary conviction initiated by defendant, defendant asserts that Heck, Edwards, and Muhammad mandate that plaintiff first obtain a "favorable termination" of his prison disciplinary conviction prior to filing the § 1983 claim in this action. Since plaintiff did not do so, defendant asserts that she is entitled to summary judgment with respect to plaintiff's retaliation claim.

In his Response, plaintiff asserts that the "favorable termination" requirement does not apply to this case because

> I make no claim for anything that would affect the length of my prison sentence. or would require immediate release or earlier release from prison. I've alluded to good time. however. I've never requested to

> have such restored as relief. . . .   The 106 action "claim for relief"
> makes no mention of good time credits.  I do not request such a
> remedy in the 3 grievances against defendant. . . . **Most significant of
> all my request for relief in amended complaint is solely monetary.
> both punative [sic] and compensatory.**  See Docket #15.  I concede
> to responding to defendants [sic] interrogatory #8 when asked how
> I've been damaged by Schmutlzlers [sic] actions with: "the 20 months
> of lost good/earned time credits". . . .  However, I disagree fervently
> with defendants [sic] assertion.page #4 line #13. that I <u>seek</u>
> "restoration".  I had for a brief moment been misinformed.  I infact [sic]
> **never was stripped of such credits by sanction for conviction of
> retaliatory C.O.P.D. charge** . . . .

(Docket No. 129 at 8) (emphasis in bold added).  In addition, plaintiff argues that

<u>Muhammad</u>, <u>Heck</u>, and <u>Edwards</u> to not apply in this case.

Given plaintiff's representation that he is not seeking restoration of any earned time credits and that in fact he was never stripped of such credits, defendant's argument for summary judgment based on the "favorable termination" ground is now moot.

### **Lack of Physical Injury**

Defendant next notes that plaintiff alleges that he sustained emotional and psychological pain as a result of defendant's acts.  Defendant asserts that to the extent plaintiff seeks compensatory damages, plaintiff's claim for such damages for mental distress and emotional distress is barred by the PLRA due to his failure to show a physical injury.  Plaintiff disagrees with this argument, but the court agrees with the defendant.

Pursuant to 42 U.S.C. § 1997e(e),  "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical

17

injury." 42 U.S.C. § 1997e(e).  The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted.  The underlying substantive violation . . . should not be divorced from the resulting injury, such as "mental or emotional injury," thus avoiding the clear mandate of § 1997e(e).  The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental emotional.

Searles v. VanBebber, 251 F.3d 869, 876 (10th Cir. 2001).

Here, defendant correctly asserts that the plaintiff has failed to allege any physical injury, and thus any claim for compensatory damages fails as a matter of law pursuant to the PLRA.  Under existing precedent, however, any claim for nominal or punitive damages would survive.  Id. at 878-79; Phillips v. Steinbeck, 2008 WL 821789, 21 (D. Colo. Mar. 26, 2008) ("Based on the prior precedents of the Tenth Circuit, this Court holds that § 1997e(e) does not bar Plaintiff's claims for injunctive relief or punitive and nominal damages based on the alleged violations of Plaintiff's right of access to the courts and Eighth Amendment rights.") (Recommendation by Magistrate Judge Mix accepted by Judge Miller).  Therefore, if summary judgment is not granted based on plaintiff's failure to exhaust, it is recommended that plaintiff's claim for compensatory damages be dismissed.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendant's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 (Docket No. 118) be granted.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file**

18

**written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives** *de novo* **review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: October 23, 2009                     s/ Michael J. Watanabe
       Denver, Colorado            Michael J. Watanabe
                                            United States Magistrate Judge